UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

IN RE:

AUGUST FRANZ SPRENG,   Case No.: 3:12-bk-2443-JAF
   Chapter 11
    Debtor.

_____/

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

This case is before the Court upon the Objection to Claim (Doc. 125, the "Objection"), filed by August Franz Spreng (the "Debtor") pursuant to Rule 3007 of the Federal Rules of Bankruptcy Procedure. The Objection seeks disallowance of Claim 20, filed by Debra Lynn Wise (the "Creditor"). On March 21, 2013, the Court conducted a trial. At the conclusion of the trial, in lieu of oral argument, the Court directed the parties to submit memoranda in support of their respective positions. Upon the evidence presented at trial and the memoranda of the parties (Docs. 214, 218), the Court makes the following Findings of Fact and Conclusions of Law pursuant to Bankruptcy Rule 7052.

### FINDINGS OF FACT

On or about August 3, 2005, the parties entered into a contract for the Debtor to purchase the Creditor's residence located in South Daytona, Florida (Debtor's Ex. 1). Apparently, the Debtor intended to develop a community in and around the Creditor's property. At the time the parties entered into the agreement, the Creditor was residing at the property. Pursuant to the contract, the parties agreed that the Creditor could continue to reside at the property for a period of up to 365 days. The Debtor paid a purchase price of $910,000 for the property. The testimony at trial was that the Creditor paid approximately $110,000 for the residence ten years earlier.

The closing on the property took place on or about February 14, 2006 (Doc. 146 at 7). At the closing, the parties agreed in writing that the Creditor would vacate the premises prior to the 365 day period (*id.*). In exchange: (1) the Creditor would be paid by the Debtor additional amounts to rent a separate property for a one year period; and (2) the Debtor would pay the moving and storage costs of the move (*id.*). Specifically, the agreement provided as follows:

> Gus Spreng [the Debtor] gives the seller Ms. D. Wise [the Creditor] the option to vacate the contract premises on 3251 South Palmetto Ave. within 45 days from today and move in a house on Oreole/Curlew or equivalent. The house will be provided free of charge for 12 months from the date the contract premises are vacated. Seller pays utilities. Buyer pays reasonable moving and storage costs.

(Creditor's Ex. 3).

Pursuant to the agreement, the Creditor vacated the property on or about March 16, 2006 (Doc. 146 at 8). In vacating the property, the Creditor removed her personal items and incurred expenses in moving and storing such items (*id.*).[1] In addition, the Creditor elected to move to an alternative residence, rather than the property at Oreole/Curlew, incurring monthly rent of $2,200 for a period of one year. Upon the completion of one year, the Creditor moved to a home she purchased, incurring additional moving expenses.

At trial, the Debtor testified that his friend owned the Oreole/Curlew property, and that he was able to lease this property from his friend for $1,000 per month. The Debtor testified that he drafted the subject rider agreement, and that he included the "or equivalent" residence language in the event the Oreole/Curlew property was not acceptable to the Creditor. The Debtor testified that such language meant equivalent in terms of a maximum of $1,000 per month he was willing to

---

[1] Such personal items included, *inter alia*, kitchen cabinets, outdoor plants, palm trees, bamboo trees, large concrete sidewalk pavers, and bricks.

expend to lease the Creditor a residence for one year.[2] The Debtor stated that in accordance with the agreement he provided the Creditor a check for $12,000, representing twelve months of rental payments (which the Creditor accepted). The Debtor additionally testified that the terms of the agreement contemplated the payment of a single move only, not two moves.[3]

For her part, the Creditor testified that the Debtor orally agreed to pay up to $2,000 per month for a rental property for a period of one year, and that the $12,000 check represented six months of rent only. The Creditor testified that the $2,000 per month rent was agreed upon prior to the execution of the rider agreement, and that it was the intention of the parties that the "or equivalent" language meant the Creditor could lease a residence with a monthly rent of $2,000 if the Oreole/Curlew property was unacceptable to the Creditor.

The Creditor testified that upon inspection of the Oreole/Curlew property she found it to be malodorous and otherwise unacceptable. Consequently, the Creditor found an alternative residence, which she leased for $2,200 per month. The Creditor testified that she acknowledged to the Debtor that the monthly rental payments exceeded what the Debtor agreed to pay (*i.e.*, $2,000 per month); however, she requested only that he pay $2,000 per month in accordance with their agreement.

The Creditor testified that she initially accepted the $12,000 check in relation to the first six months of rent, and that she did not receive any subsequent payment(s) as to the remaining six

---

[2] The Debtor additionally testified that the "or equivalent" language meant equivalent in terms of the number of bedrooms and bathrooms the Oreole/Curlew property contained, which is apparently two bedrooms and one and one half baths (*see* Debtor's Ex. 3). The Creditor ultimately rented an alternative residence which contained three bedrooms and two bathrooms. As will be explained more comprehensively below, the Court finds the Debtor agreed to pay the Creditor up to $2,000 per month if the Creditor desired to lease a residence other than the Oreole/Curlew property. In this regard, the Court finds the parties had a meeting of the minds with respect to the amount of monthly rent the Debtor was willing to expend, rather than the number of bedrooms and bathrooms the Creditor was permitted to lease.

[3] It should be noted that the original contract for the sale of the Creditor's residence did not provide for the payment of moving expenses (*see* Debtor's Ex. 1).

months. The Creditor further testified that she encountered the Debtor at a local shop and inquired of him as to when the remaining rental payment(s) would be forthcoming, to which the Debtor responded that he did not have any more money for the Creditor.

The Creditor contends that despite demand,[4] the Debtor has failed to pay the full amount due and owing for rent, storage costs, and moving expenses (for a total amount of $21,000.59).

## CONCLUSIONS OF LAW

The instant case presents three issues. First, whether the agreed upon rent for a one year period was a maximum of $1,000 or $2,000 per month. Second, whether the agreement contemplated a single move or two moves. Lastly, whether the costs associated with moving and storing uprooted palm trees and plants, concrete sidewalk pavers, bricks, and kitchen cabinets are considered "reasonable moving and storage costs."

The rider agreement is silent as to what law governs its interpretation. In Florida, the doctrine of *lex loci contractus* is followed. *Clarendon Am. Ins. Co. v. Bayside Rest., LLC*, 567 F. Supp. 2d 1379, 1387 (M.D. Fla. 2008). This doctrine provides that if a contractual provision is silent as to what the governing law is, the contract is governed by the law of the state in which the contract is made. *Id.* In this instance, Florida law applies to the rider agreement as it was executed in Florida. Moreover, the parties do not assert any other law applies.

In Florida, when interpreting a contract, courts are typically bound by the four corners of the document. *Duval Motors Co. v. Rogers*, 73 So.3d 261, 265 (Fla. 1st DCA 2011). "As a general rule, evidence outside the contract language, otherwise known as parol evidence, may not be considered unless the contract language contains a latent ambiguity." *Id.* A latent ambiguity occurs

---

[4] In attempting to collect from the Debtor, the Creditor caused an attorney to demand payment from the Debtor, and eventually filed suit in state court (*see* Doc. 146 at 7–8; Debtor's Ex 34).

in a contract when "the language employed is clear and intelligible and suggests but a single meaning, but some extrinsic fact or extraneous evidence creates a necessity for interpretation or a choice among two or more possible meanings." *Id.* at n.2 (internal quotations and citations omitted).

Parol evidence may be admitted to "explain, clarify, or elucidate the ambiguous term." *Strama v. Union Fidelity Life Ins. Co.*, 793 So.2d 1129, 1132 (Fla. 1st DCA 2001) (internal quotations and citations omitted). Once it is determined that parol evidence is necessary to establish the parties' intent, a court's finding as to intent is a question of fact. *Centennial Mortgage, Inc. v. SG/SC, Ltd.*, 772 So.2d 564, 566 (Fla. 1st DCA 2000). Parol evidence includes a verbal agreement made before or at the time of the contract in question. *Duval Motors*, 73 So.3d at 265.

Here, although the rider agreement appears to be straightforward, the parties' conflicting interpretations indicate unanticipated ambiguities regarding the "or equivalent" residence language and whether the agreement contemplated one or two moves. *See id.* at 265 n.2. The Court must therefore look to parol evidence in determining the proper construction of the rider agreement in accordance with the parties' original intent.

With respect to whether the parties agreed to the payment of a maximum of $1,000 or $2,000 per month for rent, the Court finds the Debtor agreed to pay up to $2,000. Specifically, in an email communication sent to the Creditor on April 11, 2006, the Debtor states as follows: "I explained to Mr. Mitchell [the Creditor's attorney at the time] that I had already given you [the Creditor] 12k for the house rent and that 2000/ month was the absolute maximum I would spend" (Creditor's Ex. 34). Based on the Debtor's statement in the email communication, *supra*, the Court finds his subsequent trial testimony that he agreed to pay only $1,000 per month is not credible. This finding is further supported by the fact that on cross-examination at trial by the Creditor's counsel, the Debtor testified that he did not remember whether he told the Creditor he would pay up

to $2,000 per month in rent. The Court finds the Debtor's memory with respect to this issue would have been better on April 11, 2006 (the date of the email communication) than on date of trial, March 21, 2013.

Based on the foregoing, the Court finds the latent ambiguity regarding the "or equivalent" residence language was intended to mean rental payments of up to $2,000 per month. Consequently, the Creditor is entitled to $12,000 in unpaid monthly rent payments for the six months the Debtor failed to pay (*see* Creditor's Ex. 33).

With respect to whether the agreement contemplated a single move or two moves, the contract contains a latent ambiguity in light of the parties' differing interpretations regarding the language which provides: "[Debtor] pays reasonable moving and storage costs." The Court finds it was the intent of the parties that the Debtor would pay for a single move only. To illustrate, the contract for the sale of the Creditor's residence did not provide for moving expenses. As a result, the Creditor would have been obligated to pay moving expenses at the expiration of the original 356 day period regardless.

While the rider agreement provides for a shorter period for the Creditor to vacate her residence (45 days), it provides a rental property free of charge for a one year period. The agreement provides that the Debtor will pay reasonable moving and storage costs associated with the move. Although the parties' testimony regarding this issue differs, the Court finds nothing in the record to support that the parties had a meeting of the minds with respect to the Debtor paying for two separate moves. Accordingly, the Debtor is only obligated to pay for the Creditor's move to the leased residence.

The final issue concerns the amount of reasonable moving and storage costs. The evidence submitted by the Creditor reveals that in moving her belongings to the leased residence, or into

storage, she paid movers to, *inter alia*, remove and transport: (1) kitchen cabinets; (2) palm trees and various other plants such as bamboo trees[5]; (3) thick, 24X24 concrete sidewalk pavers; and (4) a multitude of outdoor bricks (Creditor's Exs. 10, 11). It appears from the invoices of the moving company that approximately one half of the Creditor's moving expenses relate to such endeavors, *supra*.

The Court finds the removal and transportation of kitchen cabinets, trees, large concrete sidewalk pavers, and a multitude of outdoor bricks are not typical moving expenses. While the circumstances of the Creditor's move were unusual in the sense that the Debtor intended to demolish her property in order to develop a community, the Court finds nothing in the record to indicate that the parties had a meeting of the minds with respect to the Debtor paying for the removal and transportation of such items. Accordingly, the Debtor is obligated to pay only one half of the Creditor's moving expenses in this regard (*i.e.*, $1,412.50) (*see* Creditor's Exs. 10, 11). The Creditor, however, is entitled to reimbursement of the costs of her moving supplies, which total $419.37. The Court finds these expenses are reasonable.

In addition, the evidence submitted by the Creditor reveals that she expended $2,897.76 for the rental of two storage units for the storing of both her home furnishings and many of the outdoor items noted above (*see* Creditor's Exs. 14-30).[6] As the Court has already found the Creditor's removal of kitchen cabinets, concrete sidewalk pavers, and bricks was not contemplated by the agreement, it follows that the storage costs associated with these items was also not contemplated by

---

[5] The costs associated with the removal of the plants and trees additionally included the costs of transplanting such items into plastic pots (*see* Creditor's Ex. 10).

[6] The Creditor asserts that she expended $2,923.26 in storage costs; however, the evidence supports $2,897.76 (*see* Creditor's Exs. 14-30).

the parties at the time of the agreement. Accordingly, the Court finds the Debtor is obligated to pay only half the Creditor's storage expenses (*i.e.*, $1,448.88).

## DISPOSITION

Based on the foregoing, the Court finds that, pursuant to the rider agreement, the agreed upon terms for the leased premises was a maximum of $2,000 per month for a one year period. Furthermore, the agreement contemplated only a single move. Lastly, reasonable moving and storage costs do not include the moving and storage of uprooted palm trees and plants, large concrete sidewalk pavers, bricks, and kitchen cabinets. Accordingly, it is **ORDERED**:

1. The Debtor's Objection to Claim 20 (Doc. 125) is sustained in part and overruled in part as provided herein.

2. The Creditor's claim is allowed in the amount of $15,280.75.

DATED this 10th day of May, 2013 in Jacksonville, Florida.

**JERRY A. FUNK**
United States Bankruptcy Judge


Counsel for the Debtor, Alexander B. Cvercko, Esq., is directed to serve a copy of this Order on all interested parties and file a proof of service within three (3) days of the Date of this Order.